FILED
SUPERIOR COURT
OF GUAM

2022 MAY 10 PM 1: 12

CLERK OF COURT

BY:_____

# IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| U.L.G., INC., a Guam corporation, et al.,<br><br>Plaintiffs.<br><br>vs.<br><br>MARY S.N. LEON GUERRERO, et al.,<br><br>Defendants. | Civil Case No. CV0776-20<br><br>**DECISION AND ORDER**<br>(Motion for Summary Judgment by<br>Defendants Phillip Schrage and Alex Lim) |

## INTRODUCTION

This matter came before the Honorable Arthur R. Barcinas on February 15, 2022, for a hearing on Defendant Phillip Schrage ("Schrage") and Alex Lim's ("Alex") Motion for Summary Judgment. Present at the hearing were: Attorney Anita Arriola for Columbus, Attorney Richard Johnson for Defendants Schrage and Lim, Attorney Joseph McDonald for Defendants Mary and Collin Leon Guerrero, Attorney Bill Mann for Defendants Lourdes San Nicolas ("Lourdes") and Pacific American Title Insurance and Escrow Company ("PATICO"), and Attorney Delia Wolff for Plaintiffs. At the hearing Schrage and Lim argued their Motion for Summary Judgment, Plaintiffs argued in opposition, and the Court took the matter under advisement. Having considered the arguments and the applicable law, the Court hereby **GRANTS** Defendants Schrage and Lim's Motion for Summary Judgment.

## UNDISPUTED FACTS

After reviewing the record, the Court finds the following undisputed facts.

### Original Ownership of the Properties

1. Three brothers, Pedro, Francisco, and Agapito Leon Guerrero, each owned a one-third (1/3) interest in Lot. No. 5134-1 and Lot No. 5134-2, Tamuning, Guam. They jointly leased the two lots to Guam Kakuei Company, Ltd., for a term of 99 years. The long-term lease provides for an escalating rent every 10 years. The current rent is $3,000 per month for all the lots. Lot No. 5134-2 was subdivided and is now known as Lot No. 5134-2-1 and Lot No. 5134-2-R1 ("the Property").

2. All three brothers are now deceased and each of their successors-in-interest currently receive $1,000 per month as their one-third share of the monthly rent.

3. Guam Kauei, as a tenant, assigned all of its interest in Lot 5134-2-1 to Baba Corporation on December 23, 1985, and all its interest in the remaining lots were assigned to American Sotetsu.

4. American Sotetsu assigned all its interest to Grandview Corporation ("Grandview") on September 3, 2003. Grandview is Columbus's sister company, and they share an office in Harmon.

5. Pedro had four children: Rita, Peter, Bernadette, and Gregory. Peter is an adult resident of Washington. Rita is an adult resident of Oklahoma. Bernadette passed away on December 20, 2020, and is now represented by her Estate.

6. Pedro conveyed his one-third (1/3) interest in the Property by Quitclaim Deed to his son Gregory on July 15, 1992.

### Formation of U.L.G.

7. Gregory formed U.L.G., a Guam corporation, with his two first cousins Pamela and Anthony Leon Guerrero. The three were then appointed as the first directors of U.L.G. Gregory owned 1,498 shares; Pamela and Anthony each owned one (1) share.

8. On July 15, 1992, Gregory transferred his one-third (1/3) interest in the Property to U.L.G.

9. Gregory died in 2013, and a Decree of Final Distribution in his probate case filed on July 15, 2016, conveyed all of Gregory's 1,498 shares in U.L.G. equally to his wife Mary (749 shares) and his son Collin (749 shares).

### *Mary Transfers U.L.G. Shares to Plaintiffs*

10. After Gregory's death, Mary wanted to "make things right" with Plaintiffs by dividing the U.L.G. shares with them.

11. Sometime in 2014 or 2015, Mary returned to Guam. At that time, she went to the offices of Goodwind, another affiliate of Columbus, to collect the monthly rent payment under the Ground Lease and to introduce herself. There she met with Schrage, the senior vice president of Goodwind, during which time Schrage introduced himself and advised her that if she ever decided that she would like to sell U.L.G.'s interest in the Property, to keep him in mind.

12. On October 15, 2018, a series of events occurred.
    a. First, Pamela and Anthony each assigned their one (1) share, and Collin assigned his 749 shares in U.L.G. to Mary, so that Mary owned all 1,500 shares in U.L.G.

    b. Second, Mary assigned all her shares to Plaintiffs accordingly: 25% each to Peter, Rita, and Bernadette (375 shares each), and 25% (375 shares) to herself.

    c. Third, the following documents were filed at the Department of Revenue and Taxation ("DRT"):
        i.  Assignment of Share Capital Stock by Anthony to Mary and Collin;
        ii. Assignment of Share Capital Stock by Pamela to Mary and Collin;
        iii. Assignment of Share Capital Stock by Collin to Mary;
        iv. Assignment of Share Capital Stock by Mary to Peter, Rita, and Bernadette;
        v.  Resolution of U.L.G. Stockholders, (1) consenting to the Assignment of U.L.G. shares; (2) electing Peter, Rita, Bernadette, and Mary as U.L.G.'s four directors; (3) and approving U.L.G.'s First Amended Articles of Incorporation and First Amended Bylaws; and
        vi. Resolution of U.L.G. Directors acknowledging the Assignment of U.L.G. shares, and electing Peter as U.L.G.'s President and Treasurer and Mary as its Secretary.

13. Then, on October 31, 2018, U.L.G. filed its 2018 Annual Report confirming that Mary, Peter, Rita, and Bernadette, each owned 375 U.L.G. shares.

### *Mary's Intent to Sell the Property*

14. In the late summer of 2019, Mary started working with Ramona Siblang ("Ramona"), a real estate affiliate with The Property Shop, to bring about the sale of the Property.

15. In October 2019, Mary and Ramona contacted Rita and Bernadette to inform them that Mary wanted to sell the Property. Rita and Bernadette told Mary she could not sell the Property. Mary became angry, saying "I've had it" and said she would call Peter.

16. When Mary contacted Peter, she told him she wanted to sell the Property for $1.5 million, but he told her not to sell the Property because the price was "too cheap." Mary said, "Never mind. Collin and I will sell it."

17. Sometime in 2019, Schrage was contacted by Phillip Law ("Law"), a real estate broker from The Property Shop. Law advised Schrage that he believed Mary, as president of U.L.G., was interested in selling U.L.G.'s one-third (1/3) undivided interest in the Property.

18. On November 4, 2019, Mary sent an offer to Columbus to sell U.L.G.'s one-third (1/3) interest in the Property for $2.5 million.

19. About a week after sending the offer to Columbus, Mary and Ramona went to DRT and reviewed the U.L.G. corporate file. Mary then discovered that the 2018 Amended Articles and Amended By-Laws had been filed on October 18, 2018, showing that Plaintiffs each owned a one-fourth (1/4) share in U.L.G.

20. Mary became extremely upset, as she believed that Plaintiffs "stole [her] company." Mary then decided she was not going to share the sale of the Property with Plaintiffs.

21. A corporate Resolution, reflecting approval by the U.L.G. board of directors on November 8, 2019, was signed by Mary and Collin. The Resolution authorized Mary, on behalf of U.L.G., to sell the Property to Columbus. The Resolution also indicated Mary's position and title as President/Treasurer, and Collin's position and title as Corporate Secretary.

*U.L.G.'s one-third (1/3) Interest is sold to Columbus*

22. Columbus is a Guam Corporation established on October 11, 1972, as a property investment entity.

23. Alex Lim ("Lim") is the Treasurer/Corporate Secretary of Columbus.

24. Phillip Schrage ("Schrage") is a representative of Columbus.

25. On November 4, 2019, Columbus received an offer from U.L.G. to purchase a one-third (1/3) interest in the Property for $2.5 million. Columbus's board of directors signed a Resolution approving the purchase of the Property, and authorizing Schrage and Lim to sign any documents relating to the transaction.

26. On November 12 and 13, 2019, Mary and Ramona went to DRT to examine U.L.G.'s filings. Ramona informed Mary that they could not go through with the transaction as things stood. Ramona also informed Lourdes San Nicolas ("Lourdes") from PATICO that there were "issues with the ownership."

27. Escrow was opened at PATICO for the purchase of the Property on November 15, 2019. Columbus requested for PATICO to assist with the closing of the transaction, and

as the agent of Fidelity National Title Insurance Company, to arrange for the issuance at closing of a title insurance policy insuring Columbus against various possible defects in title. In conjunction with the closing and investigations into the state of the title, neither Schrage, Lim, nor any other agent of Columbus, made any investigation of the state of the title. The professionals at PATICO conducted an investigation on title and reviewed the corporate records of U.L.G. provided by Mary.

28. On November 21, 2019, Columbus paid an initial deposit of $25,000, by check.

29. On November 22, 2019, and again on December 5, 2019, PATICO made written requests for U.L.G.'s Articles, Bylaws, Operating Agreements, and any amendments.

30. Mary and Ramona never provided such documents to PATICO or Columbus, nor did they inform PATICO or Columbus about Plaintiffs' ownership of U.L.G. shares prior to closing of the transaction.

31. On November 29, 2019, Mary filed U.L.G.'s Corporate Annual Report for 2019, which stated that she, Collin, Pamela, and Anthony were the shareholders of U.L.G. The Annual Report also indicated that Mary was President and Collin was Secretary of the corporation.

32. On December 6, 2019, Mary signed the Warranty Deed for the transaction.

33. Closing occurred on December 13, 2019.
    a. Columbus paid the purchase price (less escrow, closing, and other fees) in the amount of $2,487,259.74, by a check issued by Goodwind.

    b. Lim and Schrage signed the Warranty Deed for the Property in the presence of Lourdes who also notarized their signatures. This was the first and only day Schrage ever met with Lourdes. During that time, Lourdes did not inform Schrage of Peter, Rita, or Bernadette's claim to the Property or their ownership of U.L.G. shares.

    c. Columbus signed the Warrant Deed; and the Deed was then recorded at the Department of Land Management.

34. Mary did not tell Peter or Rita about the sale of the Property. Instead, Mary instructed PATICO to wire the net sale proceeds in the amount of $2,321,003.74, to her account at Coast360.

35. On December 18, 2019, Mary "approved" a Resolution declaring a dividend of $2,320,858.74 to the shareholders of record of U.L.G. The money was then divided between Mary and Collin. Neither Peter, Rita, nor Bernadette received any of it.

36. Columbus is a one-third (1/3) interest owner in the Property.

*Columbus Learns of Plaintiffs' Claim to the Property for the Frist Time*

37. In January 2020, Peter, Rita, and their spouses traveled to Guam and visited the Property. At that time they were referred to Columbus's office where they met with Schrage. Peter and Rita then informed Schrage that they were shareholders in U.L.G., and that Mary and Collin had no authority to sell U.L.G.'s interest in the Property. Schrage told them that U.L.G.'s interest in the Property had been sold. This was the first time that Columbus learned of Plaintiffs' claim to the Property.

38. Peter and Rita then went to PATICO and spoke with Lourdes, the escrow officer who had handled the transaction. Lourdes confirmed that U.L.G.'s interest in the Property had been sold. As a result, Peter, Rita, and Bernadette retained counsel and filed the instant suit.

39. Prior to closing, Mary never spoke to anyone from Columbus about the transaction.

40. Prior to closing, Columbus was not aware, nor was it informed that there were Amended Articles of Incorporation or Amended Bylaws for U.L.G.

41. Prior to closing, Columbus had no actual or constructive notice of any claim to the Property by Plaintiffs.

42. Prior to closing, Columbus did not have actual or constructive notice of any family or corporate dispute between Mary and Plaintiffs.

43. Columbus did not have actual or constructive notice of Mary's alleged lack of authority to sell the Property to Columbus.

44. Columbus did not know the ownership of U.L.G. had changed in 2018. Instead, Mary provided a seemingly valid U.L.G. corporate resolution authorizing her to sell the Property to Columbus, prior to closing.

45. Columbus had no actual or constructive knowledge of Mary's alleged breach of fiduciary duty. Nor did Columbus give substantial assistance or encouragement to Mary to breach any fiduciary duty.

46. No one from Columbus ever met with Collin, Pamela or Anthony at any time.

47. Columbus did not conspire with Mary, Collin, PATICO, Lourdes, Pamela, Anthony, or Ramona to deprive U.L.G., and Plaintiffs of their interest in the Property.

48. Columbus did not commit any wrongful acts to any of the other parties in the instant case, nor did it commit any acts resulting in damages to U.L.G., and Plaintiffs.

DISCUSSION

## I.    SUMMARY JUDGMENT STANDARD.

Summary judgment is appropriate if the pleadings, deposition, interrogatories and admissions on file together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Guam R. Civ. P. 56(c); *see* also *Gov't of Guam v. Gutierrez*, 2015 Guam 8 ¶¶ 25-26. If, after adequate time for discovery, the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which the party will bear the burden of proof at trial," then summary judgment is required. *Kim v. Hong*, 1997 Guam 11 ¶ 8.

When deciding a motion for summary judgment, "the court must draw inferences and view the evidence in a light most favorable to the non-moving party." *Gutierrez*, 2015 Guam 8 ¶ 26. If the moving party demonstrates that there are no genuine issues of material fact, the non-movant cannot merely rely on the allegations contained in the pleading and must produce some significant probative evidence to support the pleading. *Bank of Guam v. Flores*, 2004 Guam 25 ¶ 7. The court's "ultimate inquiry is to determine whether the 'specific facts' set by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor on that evidence." *Id.* The Guam Supreme Court has held that a defending moving party may satisfy its moving burden "by showing there is an absence of evidence" to support a claim. *Guam Sanko Transportation, Inc., v. Pacific Modair Corporation*, 2012 Guam 2 ¶ 7. It may also satisfy its burden by "producing evidence negating an essential element" or claim. *Id.*

Although the Guam Rules of Civil Procedure allow that "[a] party against whom a claim... is asserted... may, at any time, move with or without supporting affidavits for summary judgment," this does not relieve the movant from separately identifying the disputed

and undisputed facts and essential elements of the cause of action for which summary dismissal is sought and applying and analyzing them under the appropriate standard. Guam R. Civ. P. 56(b); *Guam Sanko Trans.*, 2012 Guam 2 ¶ 7.

## II.    COUNT III: AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

The elements of the common law tort of aiding and abetting breach of fiduciary duty are include: (1) the primary tortfeasor breaches a fiduciary duty which he owes to the victim-plaintiff; (2) the aider-abettor defendant has actual knowledge of the breach; (3) the aider-abettor defendant lends the primary tortfeasor substantial assistance or encouragement in committing the breach; and (4) the victim-plaintiff suffered damages proximately caused by the breach. *Lujan v. Girardi,* No. Civ No. 09-00017, 2009 WL 5216906, at *10 (D. Ct. Guam Dec. 29, 2009).

On April 26, 2022, the Court issued its Decision and Order finding that Plaintiffs failed to satisfy the elements for aiding and abetting breach of a fiduciary duty as it relates to Columbus. *See* Decision & Order pp. 12-15 (April 26, 2022). Being that Schrage and Lim were the agents acting on behalf of Columbus, the Court adopts the same analysis here.

### a.    Primary Tortfeasors Breach A Duty Which They Owe To Plaintiffs.

A defendant can be liable for aiding and abetting breach of fiduciary duty in the absence of an independent duty owed to the plaintiff. *American Master Lease LLC v. Idanta Partners, LTD.*, 225 Cal. App, 4th 1451, 1476 (Cal. App. 2014).; citing *Neilson v. Union Bank of California, N.A.* 290 F.Supp.2d 1101, 1135 (C.D. Cal. 2003).

There are two different theories to which a person may be liable for aiding and abetting a breach of fiduciary duty. One theory, like conspiracy to breach a fiduciary duty, requires that (1) the aider and abettor owe a fiduciary duty to the victim, and (2) that the aider and abettor

provide substantial assistance to the person breaching his or her fiduciary duty. *Id.* at 1477; citing *Casey v. U.S. Bank Nat. Assn.*, 127 Cal. App. 4th 1144, 1144.

The second theory for imposing liability for aiding and abetting breach of fiduciary duty arises when the aider and abettor commits an independent tort. *Id.*; see *Casey*, 127 Cal. App. 4th at 1144. This occurs when the aider and abettor makes "a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act." *Id.*; citing *Berg & Berg Enterprises, LLC v. Sherwood Partners, Inc.*, 131 Cal. App. 4th 802, fn.10 (Cal. App. 2005).

Here, no evidence illustrates that Schrage and Lim breached a duty. Under the first theory, Plaintiffs have to prove that (1) Schrage and Lim owed Plaintiffs a duty, and (2) Schrage and Lim provided substantial assistance to Mary and Collin in the alleged breach of fiduciary duty. In its April 26, 2022, Decision and Order, the Court established that Columbus's role in the instant case is a bona fide purchaser. Such status applies to Schrage and Lim, as the authorized agents who carried out the transaction on Columbus's behalf. The only duty Schrage and Lim owed to Plaintiffs was to act as a good faith purchaser, which is what occurred here. Further, Schrage and Lim could not have substantially assisted Mary and Collin in the alleged breach of fiduciary duty because Schrage and Lim were completely unaware of any breach that may have occurred. The evidence shows that Schrage and Lim were operating under the representation that Mary had the authority and the necessary approval to sell the Property. Schrage and Lim were unaware, uninformed, and overall lacked notice of any disputes that occurred between Mary and Plaintiffs. Therefore, Schrage and Lim could not have substantially assisted in something they were completely blind to.

Under the second theory, Plaintiffs would have to prove that Schrage and Lim committed an independent tort. Again, there is no evidence that speaks to this claim. Instead,

the evidence demonstrates that there was a transaction that was executed without flaw. Columbus received an offer. Columbus's board of directors executed a resolution authorizing Schrage and Lim to sign any documents relating to the transaction. The offer was accepted. Escrow was opened. Columbus made an initial payment of $25,000. Mary signed the deed. Columbus closed on the transaction by paying the purchase price of $2,487,259.74, signing and recording the deed. Throughout the duration of the transaction, no tort seems to have been committed by Columbus, Schrage, or Lim. Having failed to establish breach under either theory, the Court finds that neither Schrage nor Lim committed a breach.

### b. The Aider-Abettor Defendant Has Actual Knowledge Of The Breach

To be liable for aiding and abetting, [the party] must have actual knowledge of the specific primary wrong in which they substantially assisted. *Casey,* 127 Cal. App. 4th at 1145. Aiding and abetting requires a defendant to reach a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act. *American Master Lease*, 225 Cal. App. 4th at 1475-76.

It has been established that Schrage and Lim lacked the requisite actual knowledge to establish the alleged wrong in which it is alleged to have assisted. This conclusion is further supported by the fact that Schrage and Lim had no actual or constructive knowledge that Mary lacked authority to sell the property. From Schrage and Lim's perspective, as the agents of a bona fide purchaser, there was no indication of a breach.

### c. The Aider-Abettor Defendant Lends The Primary Tortfeasor Substantial Assistance Or Encouragement In Committing Breach.

Aiding-abetting focuses on whether a defendant knowingly gave 'substantial assistance' to someone who performed wrongful conduct. *American Master Lease*, 225 Cal. App. 4th at 1475.

Neither Schrage nor Lim provided knowing and substantial assistance to Mary or Collin in the alleged breach of fiduciary duty. The evidence reflects that the only thing Columbus did, by and through Schrage and Lim, was purchase the property, in good faith, for value, without actual or constructive notice of Plaintiffs' rights. Schrage and Lim operated on Mary's representation that she was President of U.L.G., and that she had the required approval to sell the Property. No evidence reflects that Schrage and Lim had actual or constructive notice that such representation was challenged by the other shareholders. Further, besides being a bona fide purchaser, there is no evidence illustrating Schrage and Lim's encouragement or substantial assistance in committing the alleged breach. Purchasing the Property as a bona fide purchaser and under these circumstances, cannot be viewed as substantial assistance of wrongful conduct.

### d. Plaintiffs Suffered Damages Proximately Caused by Breach

As discussed above, Plaintiffs fail to satisfy the elements for Count III: Aiding and Abetting Breach of Fiduciary Duty as it relates to Schrage and Lim. As such, Schrage and Lim's role as agents of a bona fide purchaser is not the proximate cause of Plaintiffs' alleged damages.

## III.    COUNT IV: CIVIL CONSPIRACY

### a. Civil Conspiracy As Alleged Between Schrage and Lim with Other Defendants

The elements of civil conspiracy are "(1) the formation and operation of the conspiracy, (2) the wrongful act or acts pursuant thereto, and (3) the damage resulting from such act and acts." *Moylan v. Citizens Sec. Bank,* 2015 Guam 36 ¶ 72; *see* also *Prakashpalan v. Engstrom, Lipscomb and Lack,* 223 Cal. App. 4th 1105, 1136 (Cal. App. 2014). There is no separate tort of civil conspiracy and no action for conspiracy to commit a tort unless the underlying tort is

committed and damage results therefrom. *Prakashpalan*, 223 Cal. App. 4th at 1136. In other words, civil conspiracy requires an agreement to participate in an unlawful activity and an overt act that causes injury, so it does not set forth an independent cause of action but rather is sustainable only after an underlying tort claim has been established. *American Master Lease*, 225 Cal. App. 4th at 1474.

On April 26, 2022, the Court issued its Decision and Order finding that Plaintiffs failed to satisfy the elements for Civil Conspiracy as it relates to Columbus. *See* Decision & Order p. 16 (April 26, 2022). Being that Schrage and Lim were the agents acting on behalf of Columbus, the Court adopts the same analysis here.

Here, there is no evidence that illustrates Schrage and Lim ever agreed to participate in any unlawful activity. The evidence only illustrates that Columbus accepted to purchase the Property after a seemingly valid offer from Mary, and did so as a bona fide purchaser. Further, the evidence further reflects that Schrage and Lim never even met with Collin, Pamela, or Anthony at any time.

**b. Civil Conspiracy As Alleged Between Schrage and Lim with Columbus**

Under the intracorporate conspiracy doctrine, members of a corporation cannot conspire amongst themselves in their capacity as agents of the corporation. *Moylan*, 2015 Guam 16 ¶ 74; *see L.L. Nelson Enters., Inc. v. County of St. Louis, Mo.*, 673 F.3d 799, 812 (8th Cir. 2012)("[A] corporation and its agents are a single person in the eyes of the law, and a corporation cannot conspire with itself.").

Here, as discussed above, Schrage and Lim were the authorized agents acting on behalf of Columbus. As such, neither Schrage nor Lim can be said to have conspired with Columbus in carrying out the transaction.

In sum, Plaintiff fails to establish the requirements for Court III: Civil Conspiracy. Having reviewed the evidence in a light most favorable to Plaintiffs, the Court finds that summary judgment is proper for Counts III, and IV.

## CONCLUSION

For the reasons set forth above, the Court hereby **GRANTS** Defendants Schrage and Lim's Motion for Summary Judgment.

**IT IS SO ORDERED** MAY 1 0 2022 _____.



**HONORABLE ARTHUR R. BARCINAS**
Judge, Superior Court of Guam

**SERVICE VIA E-MAIL**
I acknowledge that an electronic copy of the original was e-mailed to:
Lujon & Wolff, McDonald, Berman Law Firm, Arriola law Firm
Date: 5/10/22 Time: 1:24pm

Deputy Clerk, Superior Court of Guam

**SERVICE VIA E-MAIL**
I acknowledge that an electronic copy of the original was e-mailed to:
Blair Sterling Johnson, Moores, J. Bronze, P. Moylan
Date: 5/10/22 Time: 1:24pm

Deputy Clerk, Superior Court of Guam